### 14756.  MAYS v. HANKINSON & HAGLER.

JENKINS, P. J.  A rent note called for "40,000 lbs. of United States stand-
ard lint cotton."  On the trial of a distress warrant to collect an alleged
balance due to the landlord, claimed to be owing partly by reason of a
very small balance of cotton not delivered, but mainly by reason of the
fact that most of the cotton actually delivered was of a grade below
the basis of "middling," and consequently of less value than the cotton
to which he was entitled, proof was submitted, without objection, in
explanation of the term "United States standard lint cotton," as fol-
lows: "There are several grades in United States standard lint cotton.
They run from strict good middling down to ordinary.  The basis is
usually middling; then strict middling, good middling, strict good mid-
dling and middling fair; and below middling is strict low middling,
low middling, strict good ordinary, and good ordinary."  The plaintiff
landlord offered evidence to show a custom among landlords and tenants
to pay rent only in "middling" cotton where the rental contract provided
for the delivery of a certain quantity of cotton, and the grade was not
specified.  He offered also to show an alleged "understanding" between
this plaintiff and the defendants that "middling" cotton should be deliv-
ered under the terms of "United States standard lint cotton."  This evi-
dence was excluded, and the jury, by direction of the court, found in
the plaintiff's favor for an amount representing the value of the por-
tion of the cotton undelivered, but against his contention that he was
entitled to the difference in value between "middling" cotton and the
grades below "middling" actually delivered.  The plaintiff excepts to
the exclusion of the testimony referred to.  The contention of the de-
fendant in error is that the only ambiguity in the contract consists in
the meaning of the trade term "United States standard lint cotton," and
that the contract was complied with by a delivery of any cotton cov-
ered by the "United States standard" system of grading.  *Held:*

1.  "Words generally bear their usual and common signification; but tech-
nical words, or words of art, or used in a particular trade or business,
will be construed, generally, to be used in reference to this peculiar
meaning.  The local usage or understanding of a word may be proved in
order to arrive at the true meaning intended by the parties."  Civil
Code (1910), § 4268 (2); *Daniel* v. *Maddox-Rucker Banking Co.*, 124
*Ga.* 1063 (2) (53 S. E. 573); *Louisville &c. R. Co.* v. *Southern Flour
Co.*, 136 *Ga.* 538 (2) (71 S. E. 884).  The meaning of the term "United
States standard lint cotton" was therefore subject to explanation by
parol testimony.  In this case its meaning was arrived at by undisputed
testimony admitted without objection.

2.  "Parol evidence is inadmissible to add to, take from, or vary a written
contract.  All the attendant and surrounding circumstances may be
proved, and if there is an ambiguity, latent or patent, it may be ex-
plained; so if a part of a contract only is reduced to writing (such as
a note given in pursuance of a contract), and it is manifest that the
writing was not intended to speak the whole contract, then parol evi-
dence is admissible."  Civil Code (1910), § 4268 (1).  In this case it
appears manifest from the agreement that some particular grade, and
not *any* grade, was in the mind of the contracting parties.  Whether

the cotton to be delivered measured up in kind to the unexpressed quality in the minds of the contracting parties was to be governed by the "United States standard" system of grading; but the provision which merely fixed the method and standard by which the grade of any quality of cotton could be arrived at did not indicate that the parties contemplated that the delivery of any possible grade would amount to a compliance with the terms of the agreement. Thus, while the contract indicates that some particular grade must have been in the minds of the parties, since a system or method of classification was provided whereby any quality of the commodity tendered could be classified according to an agreed standard, it does not speak the entire agreement, in that it fails to designate which grade the standard system of grading was to be applied to. The contract thus indicating on its face a lack of completeness in this respect, it is competent (where the statute of frauds is not involved) to supply such omission by explaining the consideration, where it can be done without contradicting any of the expressed terms of the agreement. *Stewart* v. *Cook*, 118 *Ga.* 541 (45 S. E. 398).

3. In the absence of any such parol understanding, a custom of the trade, if of such universal practice as would justify the conclusion that it must by implication have formed a part of the agreement, could be proved in aid of an otherwise incomplete or ambiguous writing. This rule does not authorize proof of a custom where it runs counter to or is inconsistent with an expressed provision of the agreement. *Stamey* v. *Western Union Tel. Co.*, 92 *Ga.* 613, 616 (18 S. E. 1008, 44 Am. St. R. 95); *Vardeman* v. *Penn. Mutual Life Ins. Co.*, 125 *Ga.* 117 (2), 120 (54 S. E. 66, 5 Ann. Cas. 221); *Lowery Lock Co.* v. *Wright*, 154 *Ga.* 867 (4)· (115 S. E. 801). Thus, if the provision, which we have construed as indicating that some particular grade of cotton was in the minds of the parties, and as merely providing a method or standard by which it could be ascertained with certainty whether or not the commodity as tendered did in fact do so, could be construed as providing that any possible quality according to the "United States standard" system of grading would satisfy the contract, then, under that construction, parol testimony would be inadmissible for the purpose of showing a contrary understanding or custom.

*Judgment reversed. Stephens and Bell, JJ., concur.*

DECIDED DECEMBER 10, 1923.

Distraint; from city court of Richmond county—Judge Black. June 8, 1923.

*William H. Fleming,* for plaintiff.

*Callaway & Howard,* for defendants.